UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-62469-Civ-COOKE/TORRES

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX SPORTS, and JOHN
OWOC,

    Plaintiffs/Counter-Defendants,

vs.

BALBOA CAPITAL CORPORATION,

    Defendant/Counter-Plaintiff.

_____/

## OMNIBUS ORDER

Plaintiffs/Counter-Defendants Vital Pharmaceuticals, Inc. ("Vital") and John Owoc ("Mr. Owoc") (collectively "Plaintiffs") bring this action to recover damages from Defendant/Counter-Plaintiff Balboa Capital Corporation ("Balboa") for Balboa's alleged breach of certain agreements relating to the lease of commercial equipment. *See generally* Pls.' Second Am. Compl., ECF No. 65. In response, Balboa brings its own breach of contract counterclaims against both Vital and Mr. Owoc. *See generally* Def.'s Countercl., ECF No. 37. Balboa filed a Motion for Summary Judgment (ECF No. 75) and Statement of Undisputed Facts in Support of its Motion for Summary Judgment (ECF No. 76), contending that Plaintiffs cannot establish their claims for breach of contract, violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), fraud, fraudulent concealment, declaratory judgment, breach of the implied covenant of good faith and fair dealing, and reformation, and contending that Defendant is entitled to judgment as a matter of law on its breach of contract counterclaims. In response, Plaintiffs filed their Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 82) and Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts and Plaintiffs' Statement of Additional Facts which Dispute Defendant's Contentions in its Motion for Summary Judgment (ECF No. 81), to which Balboa filed its Reply to Plaintiffs' Response (ECF No. 83) and corresponding Reply to Plaintiffs' Statement of Undisputed Facts (ECF No. 85).

I have reviewed Defendant Balboa's Motion for Summary Judgment and accompanying attachments, Plaintiffs' Response and accompanying attachments, Defendant's Reply and accompanying attachments, the record, and the relevant legal authorities. I agree that Plaintiffs are unable to establish their claims against Balboa and that Defendant Balboa is entitled to summary judgment on its counterclaims. Therefore, Defendant's Motion for Summary Judgment is granted.

## I.  BACKGROUND

Plaintiffs' are engaged in the sale of dietary and sports nutrition supplements and energy drinks. Def.'s Statement Undisputed Facts ¶ 2, ECF No. 76. Defendant Balboa is in the business of leasing commercial equipment, which Plaintiffs utilized to manufacture and package its products. *Id.* at ¶¶ 2, 5. On May 23, 2008, David White, Vice President and Branch Manager of Balboa, sent to Darlene Vera Owoc, former Controller at Vital, a lease proposal for certain commercial equipment. *Id.* at ¶ 6; *see also* ECF No. 83-1, Ex. A. This proposal contains lease rate factors for both a 10% residual (purchase) option and a $1.00 residual (purchase) option. *See* ECF No. 83-1, Ex. A. This proposal also states that any lease entered into under the terms of the proposal "shall close on or before 7/23/2008" and that the proposal "expires 05/30/2008." *Id.* On November 11, 2008, David White sent to Darlene Owoc another lease proposal for certain commercial equipment. *See* ECF No. 83-1, Ex. B. This lease proposal does not include any information regarding a residual (purchase) option; instead, it states that the lease term shall be for a period of 36 months, with a lease rate factor of .01957 and a payment of $3,328.55. *Id.* This November 11, 2008 proposal also states that any lease entered into under the terms of the proposal "shall close on or before 1/11/2009" and that the proposal itself "expires 11/14/2008." *Id.*

Subsequently, on November 20, 2008, Plaintiff Mr. Owoc signed a Master Lease Agreement ("Master Lease") on behalf of Plaintiff Vital. Def.'s Statement Undisputed Facts ¶ 8. Balboa executed the Master Lease on January 9, 2009. *Id.* The Master Lease is comprised of four equipment schedules, which are incorporated into the Master Lease. *Id.* at ¶ 12. The equipment schedules are identified as lease schedule numbers 143467-001 ("001"), 143467-003 ("003"), 143467-004 ("004"), and 143467-005 ("005"). *Id.* at ¶ 13. Equipment schedule 001, executed by Plaintiff Vital on November 20, 2008, is for a base term of 12 months, with a deposit of $3,328.53 and a quarterly payment of $9,985.59. *See*

ECF No. 75-2. It also states that it "is made pursuant to and incorporates by reference each and every term of that certain Master Lease Agreement." *Id.* Equipment schedule 003, executed by Plaintiff Vital on November 16, 2009, is for a base term of 16 months, with a deposit of $4,046.56 and a quarterly payment of $12,139.67. *Id.* Equipment schedule 003 also states that it "is made pursuant to and incorporates by reference each and every term of that certain Master Lease Agreement." *Id.* Equipment schedule 004, executed by Plaintiff Vital on November 16, 2009, is for a base term of 16 months, with a deposit of $3,575.68 and a quarterly payment of $10,727.04. *Id.* Equipment schedule 004 also states that is "is made pursuant to and incorporates by reference each and every term of that certain Master Lease Agreement." *Id.* Finally, equipment schedule 005, executed by Plaintiff Vital on November 16, 2009, is for a base term of 16 months, with a deposit of $2,162.66 and a quarterly payment of $6,488.00. *Id.* It also states that it "is made pursuant to and incorporates by reference each and every term of that certain Master Lease Agreement." *Id.*

The Master Lease anticipates that the parties will enter into various equipment leases and explicitly states that the Master Lease itself sets forth the "terms and conditions under which such Lease(s) shall be governed." ECF No. 30-1. The Master Lease further states that all equipment described in "the Schedule(s) … now or hereafter from time to time executed by Lessor and Lessee" shall be "made a part [of the Master Lease], all upon the terms and conditions hereinafter set forth as supplemented with respect to each item of Equipment by the terms and conditions set forth in each Schedule." *Id.* at ¶ 1. The Master Lease also includes the following pertinent terms:

> 2. TERM. … The base term ("Base Term") of each Lease shall commence on the first day of the calendar quarter following the Commencement Date (January 1, April 1, July 1, October 1) and terminate upon the expiration of the number of months specified in each Schedule. Each lease may be terminated by Lessee at the end of the base term if one hundred twenty (120) days prior to the end of the base term, written notice of such termination is delivered to Lessor via certified mail. Each Lease may be terminated by Lessor at the end of the base term if at least sixty (60) days prior to the end of the base term, written notice of such termination is delivered to Lessee via certified mail. Otherwise the term of each Lease shall automatically be extended for six months following the end of the initial base term at the rent stated on the respective Schedule(s), and shall renew thereafter for successive three

month periods until notice of termination is provided by Lessee. During the initial extension period, Lessor, at its sole option, may terminate each lease upon ninety (90) days prior written notice to Lessee via certified mail. After the initial extension period, each Lease may be terminated by either Lessor or Lessee at the end of any calendar month, provided that ninety (90) days prior written notice of such termination is delivered to the other party via certified mail.

….

4. FINANCE LEASE STATUS. … (f) Lessor provides no warranties or other rights with respect to the purchase of the Equipment and any and all rights Lessee has with respect to the purchase of the Equipment are solely against supplier, and Lessee may communicate at any time with the supplier prior to executing this Lease.

….

9. OWNERSHIP. The Equipment … is, and shall at all times be and remain, the sole and exclusive property of Lessor, and Lessee shall have no right, title or interest therein or thereto except as expressly set forth in this Lease.

….

18. RETURN OF EQUIPMENT. Upon expiration of the term of any Lease, (unless Lessee shall have duly exercised any purchase option with respect to such Lease), or after default, on demand by Lessor, Lessee will at its sole cost and expense deliver the Equipment (in the same condition as when delivered to Lessee, reasonable wear and tear resulting from authorized use thereof alone excepted) to Lessor's premises set forth above or any place designated by Lessor in writing, for such disposition as Lessor may determine. No such return shall constitute termination of this Lease unless Lessor shall agree in writing.

….

21. DEFAULT. Any of the following events or conditions shall constitute an event of default hereunder: (a) nonpayment of any rental payment or other amount provided for in any Lease; (b) default by Lessee in the performance of any other obligation term or condition of any Lease.

….

23. WAIVER, ETC. … If Lessee, whether with or without the permission of Lessor, remains in possession of any items of Equipment beyond the expiration of the applicable Lease term without such Lease term having been formally extended, Lessee shall be responsible to pay rent at the rate heretofore in effect and shall also remain obligated to perform and observe all other covenants and agreements of Lessee hereunder, but no

4

> such retention of possession shall be construed as an extension of said lease term or as a waiver of Lessor's right to repossess said items of Equipment unless expressly agreed to in writing by Lessor.
>
> ….
>
> 30. **MISCELLANEOUS.** … **ANY AMENDMENT TO THIS MASTER LEASE AND/OR SCHEDULE TO BE EFFECTIVE MUST BE IN WRITING AND SIGNED BY LESSOR AND LESSEE.** This Master Lease constitutes the entire agreement between the parties hereto with respect to the leasing of the Equipment.

*Id.* (emphasis in original).

In addition to executing the Master Lease on behalf of Plaintiff Vital, Mr. Owoc also executed a Personal Guaranty on November 20, 2008 "[i]n consideration of [Balboa] entering into any Master Lease Agreement, Lease Schedule, or other financial transaction of any kind whatsoever, now or hereafter made with [Vital]." ECF No. 75-3, Ex. C. In this Guaranty, Mr. Owoc "unconditionally guarantees to [Balboa] … the prompt payment, observance, and performance when due of all obligations of [Vital] under all Master Lease Agreements." *Id.* Additionally, per the terms of the Guaranty, upon any default by Vital of its obligations under the Master Lease, "the liabilities and obligations of [Mr. Owoc] shall, at the option of [Balboa], become forthwith due and payable to [Balboa] without demand or notice of any nature, all of which are expressly waived by [Mr. Owoc]." *Id.*

Since October 1, 2014, Plaintiff Vital has failed to make lease payments for equipment schedules 003, 004, and 005. Def.'s Statement Undisputed Facts ¶ 20. Additionally, Vital remains in possession of the equipment specified in equipment schedules 003, 004, and 005. *Id.* at ¶ 21; Pls.' Resp. Def.'s Statement ¶ 21, ECF No. 81.

## II. LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence

in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record...mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III. DISCUSSION[1]

Plaintiffs assert counts of breach of contract, violation of FDUTPA, fraud,

---

[1] The parties agree that California substantive law applies to the contractual claims while Florida law applies to the tort claims.

fraudulent concealment, declaratory judgment, breach of the implied covenant of good faith and fair dealing, and reformation against Balboa. In response, Defendant Balboa asserts counterclaims against each Plaintiff for breach of contract. Defendant Balboa moves for summary judgment in its favor on Plaintiffs' claims as well as on its own counterclaims, arguing that Plaintiffs' claims fail as a matter of law since the terms of the Master Lease and Personal Guaranty are clear and unambiguous. I agree with Defendant Balboa and will address each count and counterclaim in turn.

### A. Breach of Contract

In its Motion for Summary Judgment, Balboa argues that it is entitled to judgment in its favor on all counts of Plaintiffs' Second Amended Complaint and on its two counterclaims because the Master Lease and Personal Guaranty are unambiguous and there is no genuine issue of material fact regarding Balboa's compliance with the Master Lease. In response, Plaintiffs argue that Balboa has in fact breached the Master Lease by failing to provide Plaintiffs with their negotiated-for purchase option for each lease equipment schedule. Additionally, Plaintiffs seek to introduce extrinsic evidence regarding the parties' communications both before and after the Master Lease was signed to support their interpretation of the Master Lease.

To establish a cause of action for breach of contract, the plaintiff must plead and prove the following: (1) the existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff. *See Oasis West Realty, LLC v. Goldman*, 51 Cal. App. 4th 811, 821 (Cal. Ct. App. 2011). Balboa challenges the third element, namely Plaintiffs' ability to demonstrate that Balboa breached the Master Lease and corresponding equipment schedules.

In order to prove their breach of contract claim, Plaintiffs seek to rely upon extrinsic evidence; that is, evidence outside of the actual contractual terms, also known as parol evidence. The crux of Plaintiffs' argument is that Paragraph 18 of the Master Lease contains ambiguous language that is reasonably susceptible to more than one possible meaning. As such, Plaintiffs argue that this Court should consider the following extrinsic evidence in finding that a genuine issue of material fact exists surrounding Defendant Balboa's alleged breach of the Master Lease: (1) the May 23, 2008 lease proposal, which contains lease rate factors for both a 10% residual (purchase) option and a $1.00 residual

7

(purchase) option; (2) emails between the parties; (3) a Bill of Sale for the equipment covered by equipment schedule 001; and (4) the expert report of Eric Barash. However, Plaintiffs' arguments fail on a number of fronts.

Plaintiffs appear to be asking this Court to consider extraneous evidence to explain the terms of the Master Lease; to essentially read a meaning into the Master Lease that just does not exist. However, "[i]t is a fundamental rule of contract law that the terms of a clear and unambiguous written contract cannot be changed by parol evidence." *College of the Sequoias Farm v. White Gold Assoc., Inc.*, 2007 WL 2022040, at *4 (E.D. Cal. July 9, 2007) (internal quotation marks omitted). "Extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the agreement was … The agreement is the writing itself." *Id.* (citing *Wagner v. Columbia Pictures Indus., Inc.*, 146 Cal. App. 4th 586, 592 (Cal. Ct. App. 2007)). Here, the Master Lease clearly delineates the terms of the parties' equipment leases as well as the parties' obligations at the end of each equipment lease term. "Each lease may be terminated by Lessee … if one hundred and twenty (120) days prior to the end of the base term, written notice of such termination is delivered to Lessor via certified mail." ECF No. 30-1 at ¶ 2. Failure to provide such notice results in the automatic extension of each equipment lease for a period of six months, which renews for successive three-month periods until notice of termination is provided to Balboa. *See id.* At the "expiration of the term of any Lease, (unless Lessee shall have duly exercised any purchase option with respect to such Lease,) … Lessee will at its sole cost and expense deliver the Equipment … to Lessor's premises…" *Id.* at ¶ 18.

Read together, the above-referenced paragraphs make clear that unless the parties have agreed to and/or entered into a separate agreement regarding Plaintiffs' purchase of the leased equipment, Plaintiffs must either continue paying to lease the equipment or else return the equipment. The Master Lease does not itself purport to offer Plaintiffs a purchase option for each equipment lease. In fact, other provisions in the Master Lease make clear that the equipment "is, and shall at all times be and remain, the sole and exclusive property of Lessor, and Lessee shall have no right, title or interest therein or thereto except as expressly set forth in this Lease." *Id.* at ¶ 9. To read the Master Lease as Plaintiffs suggest would violate a fundamental rule of contract interpretation because Plaintiffs' espoused interpretation would render other portions of the contract meaningless. It is well settled that

a contract should be interpreted so as to give meaning to each of its provisions: "Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous." Restatement (Second) of Contracts § 203(a) (1979); *Continental Mfg. Corp. v. Underwriters at Lloyds London*, 185 Cal. App. 2d 545 (Dist. Ct. App. 1960) ("It is a cardinal rule in interpretation of contracts that the contract is to be taken by its four corners and so construed as to give effect to every part of it, if possible."); *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 872 (9th Cir. 1979) (contracts should be interpreted to be "internally consistent"). Plaintiffs' reading of the Master Lease would render Paragraphs 2, 9, 18, and 23 superfluous, which cannot stand. As such, Plaintiffs' proffered parol evidence is inadmissible.

Plaintiffs circuitously argue that their proffered evidence exposes a latent ambiguity in the Master Lease and as such, should be considered to explain the contract and give the Master Lease a meaning to which it is not only reasonably susceptible but also a meaning that Plaintiffs understood it to have. Plaintiffs rely heavily upon the California Supreme Court's decision in *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co*, 69 Cal. 2d 33 (Cal. 1968), to support their arguments. However, Plaintiffs' reliance upon *Pacific Gas* is inapposite because it is inapplicable here. The reasoning in *Pacific Gas* applies "[w]here the meaning of the words used in a contract is disputed." 69 Cal. 2d at 39-40. In that circumstance, "the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning." *Id.* Indeed, even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence, which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible. *See id.*

Here, Plaintiffs argue that Paragraph 18 of the Master Lease "specifically references [Vital's] right to exercise a 'purchase option' and, pursuant to paragraph 18, [Vital] was provided with such a purchase option via the correspondence between the parties … as well as through the relevant industry custom and practice." Pls.' Resp 4, ECF No. 82. Plaintiffs' own argument cuts against the relief Plaintiffs seek because Plaintiffs, albeit inadvertently, recognize that the Master Lease itself does not provide Plaintiffs with an actual purchase option. By Plaintiffs' own words, the Master Lease references Plaintiffs' "right to exercise a 'purchase option,'" which Plaintiffs then contend was provided through various extraneous

correspondence. Plaintiffs have essentially inferred a right into the Master Lease that cannot reasonably exist from a plain reading of the contract language alone. As such, even were the Court to conduct the two-step analysis laid out in *Pacific Gas* and provisionally accept Plaintiffs' proffered evidence, the language of Paragraph 18 of the Master Lease is not "reasonably susceptible" to the interpretation urged by Plaintiffs. Plaintiffs' "proffered interpretation stretches the contractual language beyond reasonable limits and violates most applicable rules of contract construction." *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 280 (9th Cir. 1992). As such, Plaintiffs' breach of contract claim fails as Plaintiffs have failed to demonstrate that Defendant Balboa breached the terms of the Master Lease by failing to offer Plaintiffs a purchase option for each lease equipment schedule.[2]

### B. FDUTPA, Fraudulent Inducement, and Fraudulent Concealment

Plaintiffs allege that Balboa made certain pre-lease and post-lease representations to Plaintiffs regarding a purchase option that Plaintiffs, in turn, relied upon. Plaintiffs further allege that Defendant Balboa's unfair, deceptive, and fraudulent statements amounted to a "bait and switch" wherein Balboa promised Plaintiffs a lease purchase arrangement but in the end, only offered a lease agreement. In support, Plaintiffs reference the various emails and expert testimony submitted in support of their Response to Defendant's Motion for Summary Judgment.

The Florida Deceptive and Unfair Trade Practices Act provides a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 86 (Fla. Dist. Ct. App. 2008) (internal citations and quotation omitted).

Under Florida law, a claim for fraudulent misrepresentation/inducement has four elements: "(1) a false statement concerning a material fact; (2) the representer's knowledge

---

[2] Plaintiffs argue, alternatively, that Balboa breached the Master Lease by overcharging Vital for the equipment delineated in equipment lease 001. However, this claim is now moot, and Plaintiffs cannot establish damages, since the parties came to an agreement to resolve the issue, to wit, Balboa agreed to sell Vital the equipment.

10

that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *G Barrett LLC v. Ginn Co.*, 2011 WL 6752551, at *4 (M.D. Fla. Dec. 13, 2011) (citing *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985)). A claim for fraudulent concealment has the following four elements: "(1) a misrepresentation of material fact or suppression of the truth; (2) [a] knowledge of the representor of the misrepresentation, or [b] representations made by the representor without knowledge as to either the truth or falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation." *Jones v. General Motors Corp.*, 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998).

The Florida Supreme Court has held that "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). As such, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had [the recipient] made an investigation, unless [the recipient] knows the representation to be false or its falsity is obvious." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 336 (Fla. 1997). However, courts have found that "reliance on fraudulent misrepresentations is unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (internal citations omitted).

Here, as discussed above, the Master Lease contains a number of express provisions that clearly indicate that all leased equipment shall remain the property of Balboa, the lessor. Plaintiffs' reliance on the clause in Paragraph 18 regarding a "purchase option" does not undercut this reasoning because Paragraph 18 does not affirmatively afford Plaintiffs a purchase option for the leased equipment. Instead, Paragraph 18 simply states that at the end of the lease term, the leased equipment must be returned to Balboa in accordance with the conditions set forth in the Master Lease, unless Balboa has agreed to sell, and Plaintiffs have agreed to purchase, the leased equipment. To interpret Paragraph 18 as Plaintiff suggests would expressly contradict a number of contractual terms regarding ownership of the leased equipment and effectively render the entire Master Lease moot. As such,

Plaintiffs cannot succeed on their FDUTPA, fraudulent inducement, and fraudulent concealment claims because any alleged misrepresentations by Balboa are clearly contradicted by the express terms of the Master Lease. *See, e.g. Garcia*, 528 F. Supp. 2d 1283 (dismissing all fraud claims because reliance was unreasonable given the express terms of a written agreement between the parties); *Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006) (finding that the plaintiff failed to state a claim under the FDUTPA where the plaintiff signed a contract whose terms expressly contradicted any misrepresentations upon which he relied).

### C. Declaratory Judgment

In Count Five of the Second Amended Complaint, Mr. Owoc, individually, seeks a declaration that he has no liability to Defendant Balboa under the Personal Guaranty due to Defendant Balboa's breach of the Master Lease and related equipment schedules, as well as Balboa's violation of FDUTPA and its fraudulent misrepresentations and concealment. However, as I have now found that Defendant Balboa did not breach the Master Lease and related equipment schedules, there no longer remains an actual case or controversy on these issues. As such, summary judgment in favor of Defendant Balboa on Count Five of the Second Amended Complaint is appropriate.

### D. Implied Covenant of Good Faith and Fair Dealing

In Count Six of the Second Amended Complaint, Plaintiff Vital asserts a claim for breach of the implied covenant of good faith and fair dealing, alleging that "Balboa's improper and deceptive conduct … does not comport with [Vital's] reasonable contractual expectation that it would own, or be able to purchase for a nominal amount, the subject Equipment at the end of the lease terms." Plaintiffs argue that they have provided the Court with "substantial evidence demonstrating a material dispute of fact with respect to whether Defendant engaged in deliberate acts which unfairly frustrated the reasonable expectations of [Plaintiffs], thereby depriving them of the benefits of their agreement." Pls.' Resp. 16.

"California law implies a covenant of good faith and fair dealing in every contract." *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989). "The implied covenant imposes certain obligations on contracting parties as a matter of law—specifically, that they will discharge their contractual obligations fairly and in good faith." *Id.* A plaintiff asserting a breach of the implied covenant of good faith and fair dealing sounding in

contract must allege the following elements: "(1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Oculus Innovative Sciences, Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sep. 10, 2007). However, "[t]he implied covenant of good faith and fair dealing is limited to protecting express terms of the contract, and cannot itself override an express contractual provision." *Jurin v. Google Inc.*, 768 F. Supp. 2d 1064, 1073 (E.D. Cal. 2011). This implied covenant cannot impose any duties or limits on the contracting parties beyond those integrated in the specific terms of the agreement. *See Moreau v. Air France*, 356 F.3d 942, 954 (9th Cir. 2003).

Here, I have already determined that the Master Lease does not afford Plaintiffs the relief they seek; it does not contain an express term that in and of itself entitles Plaintiffs to a purchase option on the leased equipment. In fact, the Master Lease contains numerous other paragraphs that would be rendered completely superfluous if I were to interpret it in the manner Plaintiffs suggest. As such, Plaintiffs have failed to demonstrate a genuine issue of material fact as to Count Six, and summary judgment must be entered in favor of Defendant Balboa.

### E. Reformation

"The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing." *Lemoge Elec. v. San Mateo Cty.*, 46 Cal. 2d 659, 663 (Cal. 1956) (internal citations omitted). Under Section 3399 of the California Civil Code, a written contract that does not truly express the intention of the parties may be revised so as to set forth that intention. *Id.* Reformation may be had for a mutual mistake, "where the failure of the written contract to express the intention of the parties is due to the inadvertence of both [parties]," or "where only one party to the contract is mistaken as to its provisions and his mistake is known or suspected by the other." *Id.*

Again, as already explained, the Master Lease is clear and unambiguous in its terms. It is a fully integrated agreement that cannot reasonably be interpreted in the manner Plaintiffs suggest. As such, summary judgment in favor of Defendant Balboa and against

Plaintiffs is proper as to Count Seven of the Second Amended Complaint because Plaintiffs cannot establish the elements necessary to support their claim for reformation of the Master Lease.

### F. *Defendant's Breach of Contract Counterclaims*

In its counterclaim for breach of contract against Vital, Balboa alleges that it provided Vital with invoices for payment and that Vital breached the Master Lease and equipment schedules 003, 004, and 005 by failing to submit quarterly rent payments when due. In its counterclaim for breach of contract against Mr. Owoc, Balboa alleges that Mr. Owoc breached the Master Lease, equipment schedules 003, 004, and 005, and the Personal Guaranty by failing to pay the unpaid lease payments as agreed to in the Personal Guaranty.

As outlined above, to establish a cause of action for breach of contract, the plaintiff must plead and prove the following: (1) the existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff. *See Oasis West Realty,* 51 Cal. App. 4th at 821. Here, the contracts at issue include the Master Lease and the Personal Guaranty. Balboa has presented evidence that it complied with its obligations under the Master Lease, equipment schedules, and Personal Guaranty. Additionally, Vital concedes that it has not submitted any payments to Balboa for the leased equipment since October 1, 2014, and that it remains in possession of the equipment. *See* Pls.' Resp. Def.'s Statement ¶¶ 20, 21. Mr. Owoc concedes that he executed the Personal Guaranty, and the record evidence demonstrates that he has not fulfilled his obligations under the Personal Guaranty. Finally, Balboa has presented evidence of damages due to Vital's and Mr. Owoc's breaches of the Master Lease and Personal Guaranty in the form of past due lease payments, taxes, and other fees, as well the fair market value of the equipment.

As such, Counter-Plaintiff Balboa has successfully established all elements necessary to find in its favor on its breach of contract claims as against both Vital and Mr. Owoc. Therefore, Defendant/Counter-Plaintiff Balboa is entitled to summary judgment as to both breach of contract counterclaims.

### IV. CONCLUSION

Having reviewed the arguments and the record, I find that Plaintiffs have failed to

establish the claims alleged in the Second Amended Complaint. Essentially, Plaintiffs fail to demonstrate that a genuine issue of material facts exists with regard to any of their remaining claims against Defendant. Accordingly, summary judgment in favor of the Defendant Balboa is appropriate, both as to Plaintiffs' claims and Defendant Balboa's counterclaims.

It is, therefore, **ORDERED and ADJUDGED** as follows:

1. Defendant Balboa's Motion for Summary Judgment (ECF No. 75) is **GRANTED**.
2. Plaintiffs' Second Amended Complaint (ECF No. 65) is **DISMISSED**.
3. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently with regard to the claims raised in Plaintiffs' Second Amended Complaint.
4. The parties shall submit, within seven (7) days of this Order, a joint proposed final judgment as to Balboa's counterclaims. If the parties cannot agree on damages, the parties shall have an additional seven (7) days to submit briefing so that final judgment may be entered in favor of Balboa and against Vital and Mr. Owoc on Balboa's counterclaims.
5. The Clerk shall **CLOSE** this case.
6. Balboa's Motion to Exclude Plaintiffs' Expert Report and Opinion Testimony of Eric J. Barash (ECF No. 77), Plaintiffs' Motion for Leave to File Surreply in Opposition to Defendant's Motion for Summary Judgment (ECF No. 86), and the parties' Joint Summary of Motion *in limine* (ECF No. 90) are **DENIED** *as moot*.

**DONE and ORDERED** in Chambers at Miami, Florida, this 25th day of August 2016.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*