UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-62469-Civ-COOKE/TORRES

VITAL PHARMACEUTICALS, INC.
d/b/a VPX SPORTS, and JOHN OWOC,

      Plaintiffs/Counter-Defendants,

v.

BALBOA CAPITAL CORPORATION,

      Defendant/Counter-Plaintiff,

_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR FEES AND NON-TAXABLE COSTS**

This matter is before the Court on Balboa Capital Corporation's ("Defendant") renewed motion for fees and non-taxable costs against Vital Pharmaceuticals, Inc. d/b/a VPX Sports and John Owoc (collectively, "Plaintiffs").  [D.E. 177, 181]. Plaintiffs filed an amended response on August 3, 2020 [D.E. 189] to which Defendant filed a supplemental reply on August 10, 2020.  [D.E. 190].  Therefore, Defendant's motion is now ripe for disposition.  After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendant's motion for fees and non-taxable costs should be **GRANTED in part** and **DENIED in part**.[1]

---

[1]    On June 12, 2020, the Honorable Marcia G. Cooke referred Defendant's motion to the undersigned Magistrate Judge for disposition.   [D.E. 182].

1

## I.  BACKGROUND

Plaintiffs filed this action on October 30, 2014, alleging claims for fraud, breach of contract, breach of an implied covenant of good faith and fair dealing, a violation of the Florida Deceptive and Unfair Trade Practices Act, unjust enrichment, and concealment.  [D.E. 1].  Defendant brought a counterclaim for breach of contract and sought back rent, taxes, interest, fees, and the fair market value of rental equipment.  On August 25, 2016, the Court granted Defendant's motion for summary judgment [D.E. 92] and the Court entered final judgment on March 29, 2019.  [D.E. 134].  The judgment awarded Defendant $652,574.13 in damages, including interest, fees, costs, and expenses.  Defendant then conferred with Plaintiff on a demand for fees and costs.  Plaintiffs had no objection to $24,774.44 in non-taxable expenses but opposed the reasonableness of the fees requested.

Defendant subsequently filed a motion for fees on May 28, 2019 [D.E. 147] and Plaintiff opposed that motion, arguing that any award should be stayed pending disposition of Plaintiffs' appeal to the Eleventh Circuit.  The Court granted Defendant's request for non-taxable expenses (because that amount was agreed upon) and denied the request for fees without prejudice so that Defendant could submit a renewed motion following disposition of the case on appeal.  [D.E. 174].  On April 3, 2020, the Eleventh Circuit affirmed the Court's final judgment and the mandate issued on May 4, 2020.  [D.E. 175].  Defendant has now timely renewed

its motion for fees, seeking $320,771.25 in fees and $2,009.60 in additional non-taxable costs.

## II. APPLICABLE PRINCIPLES AND LAW

Generally, under the "American Rule" in the United States, the prevailing party in litigation may not collect its attorney's fees from the losing party. *See Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598, 602 (2001). That is, each party – including the prevailing party – must bear its own fees. The rationale of the "American Rule" is that "since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit." *Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d 1226, 1229 (6th Cir. 1984).

Certain exceptions, however, do exist that allow a prevailing party to recover its fees. *See id.*; *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1329 (11th Cir. 1998) ("Florida conforms to the 'American Rule' under which attorneys' fees are awarded only when permitted by statute or contract." (citing *Cook v. Deltona Corp.,* 753 F.2d 1552, 1563 (11th Cir. 1985)). These exceptions include: "(1) when a statute grants courts the authority to direct the losing party to pay attorney's fees; (2) when the parties agree in a contract that one party will pay attorney's fees; and (3) when a court orders one party to pay attorney's fees for acting in bad faith." *In re Home Depot Inc.*, 931 F.3d 1065, 1078 (11th Cir. 2019).

### III.   ANALYSIS

Defendant seeks $320,771.25 in fees for 1,158.80 hours of attorney work, and $2,009.60 in non-taxable costs. Defendant argues that these amounts are reasonable given the years of work spent on this case, including the filing of dispositive motions, litigation on the amount of damages, enforcement proceedings, and appellate practice. Although Plaintiffs agree that Defendant is the prevailing party in this action and that Defendant should be entitled to fees and non-taxable costs, Plaintiffs claim that the amount sought is unreasonable. Instead, Plaintiffs argue that a fee award between $270,000 and $275,000 is more appropriate and, when a reduced fee award is added to Defendant's request for $2,009.60 in non-taxable costs, the total amount should not exceed $280,000.

### A.   *The Lodestar Method of Determining Reasonable Fees*

In determining a reasonable fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id*.

4

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). Following the Court's calculation, "the court must next consider the necessity of an adjustment for results obtained." *Norman,* 836 F.2d at 1302. Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id*. at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999). Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award. *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit. *See Norman*, 836 F.2d at 1299-1302.

5

It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters. *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### B.     *The Reasonable Hourly Rate*

Having established the framework for determining a reasonable fee, the first step of the lodestar analysis requires the Court to determine a reasonable hourly rate. A reasonable hourly rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted). Here, the relevant legal community is South Florida.

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*[2] The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

---

[2] The 12 *Johnson* factors are as follows:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).

Defendant seeks an hourly rate for nine different attorneys based on their individual levels of experience including: (1) Ralph Confreda ("Mr. Confreda") at $250 to $295 with 10 years of experience, (2) Lisa Schiller ("Ms. Schiller") at $325 with 27 years of experience, (3) Steve Marcus ("Mr. Marcus") at $325 with 21 years of experience, (4) Mark Chaney ("Mr. Chaney") at $250 to $295 with 6 years of experience, (5) Stephen Abeyta ("Mr. Abeyta") at $250 to $295 with 12 years of experience, (6) Richard Aguilar ("Mr. Aguilar") at $325 to $405 with 34 years of experience, (7) Randy Dow at $325 with 23 years of experience, and (8) Will Grimsley at $325 with 10 years of experience.

Plaintiffs only take aim at the rates requested for Mr. Chaney because he is a sixth year associate who should not recover fees at $295 per hour. Plaintiffs claim that Mr. Chaney's rate should be reduced to $175 per hour because that is the prevailing market rate for an associate working in the New Orleans legal market. And because Mr. Chaney works in that market, Plaintiffs request that his hourly rate be reduced accordingly.

Plaintiffs' argument is unpersuasive, in large part, because reasonableness is generally determined based on the prevailing rates in the district where a case is filed – not in the district where an attorney's office is located. *See American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 437 (11th Cir. 1999) (citation and internal quotation marks omitted); *Cullens,* 29 F.3d at 1494 ("The rate of attorney's fees is that of the place where the case is filed."). That is, while

8

Plaintiffs request that Mr. Chaney's billing rate be reduced to the New Orleans legal market, that contention is misplaced because this case was filed in the Southern District of Florida – not Louisiana. And the Court is bound to determine the appropriate market rate for this district (as that is where its experience lies) with respect to lawyers of reasonably comparable skills, experiences, and reputation. *See Norman*, 836 F. 2d at 1299. Of course, at all times, "[t]he party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger,* 10 F.3d at 781 (citation and internal quotation marks omitted).

To that end, Mr. Chaney's billing rate is consistent with other cases in this district that have found that a sixth year attorney is entitled to a rate of approximately $300 per hour in similar commercial litigation cases. *See, e.g.*, *Parrot, Inc. v. Nicestuff Distrib. Int'l, Inc.*, 2010 WL 680948, at *12 (S.D. Fla. Feb. 24, 2010) (finding reasonable hourly rates for commercial litigator with 22 years of experience to be in the range of $475.00 – $500.00, and for a sixth-year associate reasonable range is $310.00 – $335.00 for work performed in 2008 – 2009); *Pellegrino v. Koeckritz Development Of Boca Raton, LLC,* 2008 WL 6128747, *3 (S.D. Fla. Nov. 24, 2008) (finding that an hourly rate of $310.00 for a commercial litigator practicing for six years was reasonable). Given that Mr. Chaney's billing rates are in line with other attorneys practicing in this district and the complex nature of this case included six years of extended litigation, Plaintiffs' challenge to Mr. Chaney's

billing rate lacks merit.[3] We therefore turn to the second step of the lodestar analysis.

### C. *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended in the litigation. The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel.*" *A.C.L.U. of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301) (emphasis in original). The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award. *See A.C.L.U. of Georgia*, 168 F.3d at 428. If the fee applicant fails to exercise required billing judgment, the Court is obligated to reduce those hours that are excessive, redundant, or otherwise unnecessary. *Id.* at 428. As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *See Norman*, 836 F.2d at 1303. Accordingly, it is perfectly proper to award attorney's

---

[3] As for the remaining attorneys that billed on this case, Plaintiffs never raised any other challenge with respect to their hourly rates. And based on the undersigned's review of the hourly rates for the other attorneys, the Court finds that no other rate appears unreasonable. We therefore limit our substantive discussion on hourly rates to Mr. Chaney.

10

fees based solely on affidavits in the record. *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Here, Plaintiffs argue that the number of hours expended in this case should be reduced because Defendant's invoices showed that multiple attorneys engaged in a substantial amount of duplicative work. Plaintiffs claim, for example, that – in December 2014 – Mr. Marcus, Mr. Abeyta, and Mr. Aguilar billed for many of the same tasks totaling 20.4 hours. Plaintiffs then contend that duplicative billing occurred again in the following June when Mr. Marcus and Mr. Abeyta each billed for tasks related to the preparation of a confidential mediation statement. These duplicative tasks continued in November 2015 when Mr. Marcus and Mr. Abeyta both billed for work preparing an opposition in response to a motion for leave to file an amended complaint.

Plaintiffs also take issue with Mr. Confreda's hours in March 2016 because he billed an excessive amount of time – 49.4 hours to be exact – for the completion of Defendant's motion for summary judgment. That same month, Plaintiffs further allege that Mr. Confreda and Ms. Schiller each billed for matters related to the deposition of Plaintiffs' expert. While Ms. Schiller's billing records were sufficient, Plaintiffs assert that Mr. Confreda's entries were vague because they merely stated that he attended the deposition without any specific reason on why he was there and what, if anything, he did to contribute. For these reasons, Plaintiffs conclude that

Defendant's invoices include at least 107.4 hours in excessive time and that any fee award should be reduced by $28,605.

Defendant's response is that no reduction should be taken because Defendant's attorneys already discounted their fees before filing their motion. Defendant states that its attorneys billed 1,138.10 hours in connection with this case and that their fees should have equaled $345,136.50. However, Defendant claims that its lawyer discounted their fees by approximately $29,632.75 and only sought $315,503.75. If the Court reduces Defendant's fees any further, Defendant believes that it would amount to a double-dip reduction. Defendant also states that Plaintiffs' response misses the mark because – rather than seeking to reduce any time spent on excessive and redundant work – Plaintiff seeks to completely eliminate any fees for these tasks. Because the complete elimination of fees for duplicative tasks would be a drastic reduction, Defendant requests that the Court grant all of the fees requested.

While Defendant's motion is in many respects well taken, there are some time entries that suggest attorneys either duplicated work or spent an excessive amount of time on certain tasks. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783). A court may not, however, do both. *See Bivins*, 548 F.3d at

12

1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours"). In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis[; r]ather, . . . it may [ ] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants such a reduction") (emphasis added). "In such cases, an across-the-board cut may be appropriate, as long as a court "articulate[s] [its] reasons for selecting specific percentage reductions." *Roy v. Bd. of Cty. Comm'rs, Walton Cty., Fla.*, 2012 WL 8013976, at *4 (N.D. Fla. Nov. 1, 2012), *Report and Recommendation adopted*, 2013 WL 1883247 (N.D. Fla. May 6, 2013) (quoting *Loranger*, 10 F.3d at 783).

Here, we opt to use an across the board cut because the billing records are voluminous and include more than two hundred pages of time entries. After carefully reviewing the billing records, they reflect an excessive amount of time spent for drafting emails, performing research, and reviewing documents on the docket. Although the time billed is not extreme, it is inflated when considering the experience of the lawyers who worked on this case and the time spent performing mundane tasks. We therefore recommend that Defendant's fees be reduced by 10%

13

to reflect a more appropriate number of hours billed in this case. Accordingly, Defendant's motion for fees should be **GRANTED in part** and **DENIED in part**.

### D. *Non-Taxable Costs*

The final issue is Defendant's request for $2,009.60 in non-taxable expenses. These costs include, amongst other things, expenses for printing, binding, paralegals, and service charges. Plaintiffs agreed, in their response that Defendants should be entitled to this amount. [D.E. 189 ("Plaintiffs do not oppose Defendant being awarded the $2,009.60 in claimed costs.")]. Because there is no dispute between the parties that Defendant should be awarded this amount, Defendant's motion for $2,009.60 in non-taxable expenses should be **GRANTED**.

### E. *Final Calculations*

Having reduced the number of hours expended in this case, Defendant should recover a fee award of $288,694.12 ($320,771.25 minus 10% or $32,077.13) and a cost award of $2,009.60. This equates to a grand total of $290,703.72. To this extent, Defendant's motion should be **GRANTED in part** and **DENIED in part**.

### IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion for fees and costs [D.E. 177] be **GRANTED in part** and **DENIED in part**:

A. Defendant's motion for fees should be **GRANTED in part** and **DENIED in part** subject to a 10% reduction.

14

B. Defendant's motion to recover $2,009.60 in nontaxable costs should be **GRANTED**.

C. Defendant should recover a total fee and cost award of $290,703.72.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 14th day of August, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge